## LANE v. GREENE ET AL.

*Landlord and tenant—Defectively executed lease for term of years—Tenancy from month to month, when—Implied contract to pay increased rental arises upon tenant's silence—Liability of tenant continuing possession and denying increased rental—Use and occupancy, or damages for trespass, with exemplary damages—Pleading—Exhibit attached to answer not considered on demurrer to answer, when.*

1. Possession under defective lease providing for rental payable monthly and practical construction of parties *held* to create tenancy from month to month.

2. Attached exhibit, which was not made a part of the answer, and could not properly have been made a part thereof, cannot be considered in determining sufficiency of answer as against demurrer.

3. Where landlord increases rent of month to month tenancy, and tenant is silent as to new terms, implied contract arises to pay increased rental.

4. Where tenant from month to month, continuing in possession after increase of rent, denies liability for increased rental, he can only be held for reasonable value of use and occupation, or for damage for trespass, with exemplary damages under appropriate circumstances for willful holding over.

(Decided  May  15,  1926.)

ERROR:  Court of Appeals for Gallia county.

*Mr. Henry W. Cherrington,* for plaintiff in error.
*Mr. R. M. Switzer* and *Mr. H. C. Johnston,* for
defendants in error.

MIDDLETON, J. The plaintiff in error is the
owner of certain real estate situated in the city
of Gallipolis, Ohio. The defendants in error at
the time this action was instituted were, and had
been, in possession of said real estate for many
years, claiming to hold the same under favor of a
certain written lease made in July, 1905, by one
John C. Shephard, who was then the owner of the
real estate. The written lease was for a term of 25
years, and was neither witnessed nor acknowledged
as provided by law. Notwithstanding the invalidity
of the lease, possession thereunder was taken by the
lessees, and has ever since been held by them and
their assignees, the defendants in error. The lease
provided for a rental of $12.50 per month, payable
monthly. In 1921, when the plaintiff in error pur-
chased the real estate, this rental had been increased
to $30 per month. Soon after his purchase, the
plaintiff in error duly notified the defendants in
error that the rental would be increased on the
first day of the succeeding month. Subsequently
other increases were made after due notice. The
defendants in error refused to pay any of said
increases or any rental whatever in excess of the
rate fixed in the lease. This action was instituted
to recover rentals at the rate specified in the
notices.

The determinative question in this case is wheth-
er or not the defective lease, around which all the
controversies between the parties to this litigation

have revolved, created a tenancy from year to year or from month to month after the lessees took possession thereunder.

In the case of *Lithograph Building Co.* v. *Watt,* 96 Ohio St., 74, 117 N. E., 25, it is held in the sixth paragraph of the syllabus:

"Possession taken and rents paid under a defectively executed lease creates a tenancy from year to year, or month to month, dependent upon the terms as to payment of rentals  *  *  *."

We must regard the rule here announced as decisive of the dispute in the instant case. It definitely establishes the doctrine that, in case of a defectively executed lease, its terms and conditions in respect to the payment of rentals are the deciding factor in determining the term of tenancy, when possession has been taken thereunder.

In the instant case the lease in question expressly made the rental payable monthly, and there is not a word or syllable in the instrument referring in any manner whatever to any annual rental or which makes any provisions in respect thereto. Moreover, the original parties to this lease treated the tenancy as one from month to month. The undisputed evidence in the case shows that the original lessor raised the monthly rental three different times without any regard whatever to any annual tenancy or term, and the lessees paid that increased rental. The first increase was made in July, 1919, the second increase was made one month later, and the third about one year later, in August, 1920. These increases in rental were made and accepted without any reference to an annual tenancy, and the mutual act of the parties in

this respect must be considered as further evidence of the fact that the tenancy was at least regarded by them as one from month to month.

A case in point may be found in *Rex Amusement Co.* v. *Nolan*, 11 Ohio App., at page 318. In that case the defective lease provided for a term of five years beginning on the 1st of March, 1914, with an aggregate rental of $2,100, payable $15 per month on the first day of each month during the first year of the lease, and of $40 per month during the remainder of the term provided in the lease. It is said in the opinion at page 324:

"The last word spoken by the court of last resort in this jurisdiction upon this subject is *Lithograph Building Co.* v. *Watt*, 96 Ohio St., 75 [117 N. E., 25], which is decisive of the issue here.   *   *   *

"In the above it is not held differently from the rule as stated in *Railroad Co.* v. *West* [57 Ohio St., 161], above noted, but the rule is amplified somewhat in holding that the term or period of the tenancy created by entering into possession under a void lease is to be determined by the periods fixed for the payment of rentals."

In view of these authorities, we are impelled to hold that when the defendants took possession under the defective lease aforesaid their act created only a tenancy from month to month, and that under the undisputed facts disclosed by this record it was error for the trial court to submit to the jury the character of the defendants' tenancy, and that all of the court's instructions in that behalf were prejudicial and erroneous.

It is contended that a demurrer to the fifth

defense was improperly overruled. It appears, however, that this contention involved a construction of the terms of the lease aforesaid, which was attached to the answer, marked Exhibit A, but was not made a part thereof. This exhibit was not only not made a part of this answer, but was not such an exhibit as might properly have been made a part thereof. It follows that the exhibit cannot be considered in determining the sufficiency of the answer, and particularly in determining the term of the tenancy under which the defendants held the property. This defense was, of course, subject to a motion to make more definite and certain, but, in the absence of such motion, we cannot say that it did not contain facts which, under some circumstances, might amount to a defense.

We have already indicated the necessity of reversing the judgment, for the reason that the defendants wholly failed to show any tenancy, except one from month to month. The further and more difficult question is whether on the admitted facts it became the duty of the trial court, and is now the duty of this court, to enter judgment as prayed for by the plaintiff. This question was raised both by the motion at the conclusion of all the testimony and by pertinent instructions to the jury, requested by the plaintiff. The testimony tended to show that the plaintiff had notified the defendants that, if the latter continued to occupy the property, they would be held liable thereafter for a named rental, and it further showed that the defendants did hold over after such notice. There is some testimony tending to show that the de-

fendants dissented from these terms, although
whether they did or not dissent was a question
never really tried. The claim of the plaintiff is
that a holding over by a tenant, after notice of an
increased rental by the landlord, makes an implied
contract that the tenant would pay such increased
rental, even though the tenant expressly declined
to accede to the new terms. Let us see how such
a rule would work in practice. Suppose that the
tenant of property, paying a rental of $50 per
month, in good faith believes himself legally en-
titled to a longer tenure than the landlord con-
cedes. The landlord notifies him that if he holds
over after a specified date, the rental will be $500
per month. If the rule is as contended for by the
plaintiff, the tenant must under the circumstances
mentioned surrender possession without making a
contest for his rights, or run the risk of being
financially ruined if in the end he be found to have
been in error in his claim for a longer tenure.
That the rule would be a harsh and oppressive
one, and might lead to the grossest intimidation
and resultant injustice, is manifest. Indeed, from
the disparity in the figures at which the property
in question was originally leased and the amount
now demanded by the plaintiff, coupled with what
the defendants offered to show the fair rental value
of the property to actually be, suggests the possi-
bility that this very case might illustrate the op-
pressive possibilities of the rule contended for.
The rule is not only an unjust one, it is also illogi-
cal. Rent is the result of contract. It always
proceeds either from contract or by reservation
in a conveyance. 2 Tiffany on Landlord and Ten-

ant, Section 211. Of course, the contract giving rise to it may be an implied one, but a contract cannot be implied when one of the parties sought to be bound protests his dissent from the terms of the proposed engagement and expressly disclaims the meeting of the minds necessary to constitute a contract. It is, consequently, out of reason to say that an implied contract arises when one of the parties is at the time expressly dissenting from its terms.

The better rule would seem to be that, if a tenant holds over after the landlord has fixed an increased rent, and the tenant is silent as to the new terms, an implied contract arises that the tenant will pay the increased rental, but, if the tenant at the time dissents from the new terms, and thus indicates a situation from which no implication of a contract arises, the tenant can only be held either (1) for the reasonable value of the use and occupation of the premises, or (2) for damages for the trespass, with, under appropriate circumstances, exemplary damages for his willful holding over. This rule would enable the landlord to recover full compensation for the wrong done him, and within reasonable limitations would permit the jury to impose punitive damages upon the wrongdoer, but it would not enable the landlord to go beyond all reason and mulct the tenant wrongfully holding over in an amount limited only by the caprice or avarice of the landlord.

It is urged, however, that, however harsh and illogical the rule contended for by the plaintiff may be, it must nevertheless be applied in this case because it is the rule laid down in *Moore* v. *Harter*.

67 Ohio St., 250, 65 N. E., 883. It must be con-
ceded that the language of Judge Davis, on page
254 of the opinion, justifies that view, although
an examination of the authorities cited by the
learned judge shows but one of them supporting
the view thus apparently expressed by him. 2
Tiffany on Landlord and Tenant, Section 210, says
that this view of Judge Davis is mere dictum, and
points out that such a rule is not only illogical in
imputing to the tenant an intention which he has
expressly disclaimed, but that it enables "the land-
lord to fix a penalty of any amount for a wrongful
holding over by the tenant."

The text-writer is right. The opinion, in so far
as it purports to lay down a rule where the tenant
has dissented from the terms of the new rental
sought to be imposed upon him, was outside the
record of that case. The only question before the
Supreme Court in the *Moore case* was the sound-
ness of an instruction given by the trial court.
That instruction was to the effect that if the
tenant held over after an increased rental had been
fixed by the landlord, and *the tenant had not dis-
sented therefrom,* the tenant was liable at such
increased rate. In affirming a judgment predicated
on that charge, the Supreme Court, in our judg-
ment, did not commit itself to the doctrine that
an implied contract might arise against the express
dissent of one of the parties.

We conclude, therefore, that, while the plaintiff
would be entitled to final judgment if we were
willing to apply to the pending case the dictum
in *Moore* v. *Harter,* that dictum does not express
the opinion of the Supreme Court, and is not the

law of this state. We consequently decline to enter final judgment in favor of the plaintiff, but order that the judgment of the common pleas be reversed, and the case remanded to that court for a new trial according to law.

*Judgment reversed and cause remanded.*

MAUCK, P. J., and SAYRE, J., concur.