TUTEUR, APPELLANT, *v.* P. & F. ENTERPRISES, INC., APPELLEE.

(No. 29409—Decided February 5, 1970.)

*Messrs. Spieth, Bell, McCurdy & Newell,* for appellant.

*Mr. John M. Drain,* for appellee.

SILBERT, C. J. This is an appeal on questions of law from a determination in the Cleveland Municipal Court of the amount recoverable by plaintiff upon a supersedeas bond filed in that court by defendant.

Appellant, plaintiff below, urges six assignments of error. We shall discuss only the first, second, fourth, fifth and sixth assignments, since we have carefully scrutinized the other assignment of error urged by appellant and find that it is not prejudicial to the substantial rights of the appellant, and it is, therefore, overruled.

The appellant claims that the Cleveland Municipal Court erred:

"I. In determining that plaintiff's recovery was limited only to rent and court costs and that it had no jurisdiction to allow plaintiff interest on the $180,000.00 purchase price of the property, the payment of which was delayed 140 days by defendant's unlawful conduct, or to allow plaintiff the $3,000.00 payment he was required to make to Cleveland State University to consummate the sale.

"II. In allowing defendant a lease security deposit

credit of $700.00 against the lease rental due of $1,316.00.''

"IV. In not allowing plaintiff interest at 6% per annum on the $180,000.00 purchase price of the property from June 30, 1967 to November 17, 1967, or 140 days.

"V. In not allowing plaintiff the $3,000.00 payment he was required to make to Cleveland State University.

"VI. In determining the amount of damages due plaintiff and in awarding plaintiff only $616.00 instead of $8,-458.46.''

On June 26, 1967, John Tuteur commenced, in the Cleveland Municipal Court, a forcible detainer action to recover premises leased by P. & F. Enterprises, Inc., at East 24th St. and Chester Avenue. After a verdict was returned in favor of the plaintiff, appellant here, on July 28, 1967, a writ of restitution was issued. The defendant, appellee herein, appealed from that judgment to this Court of Appeals, and the defendant and a surety executed and filed a supersedeas bond in the Municipal Court conditioned on the proposition that they would "pay all the money, costs and damages which may be required of or awarded against principal upon the final determination of said appeal.'' That appeal was dismissed when the issue of defendant's stay at the premises became moot with the departure of the defendant from the disputed premises.

The appellant subsequently filed a motion in the Municipal Court to determine the amount due him from the bond. The motion was heard on June 21, 1968.

At the hearing, Mr. Anthony B. Baldwin, the business manager of Cleveland State University, who was in charge of procuring property, testified that the state was first interested in the property around August 1966. The state signed an option to purchase appellant's property on February 18, 1967. This option stated that the premises would be delivered free and clear of all encumbrances. At this time the appellee was occupying the land under a lease dated May 1963, having exercised an option to extend the lease until December 31, 1967. Before the state exercised its option to buy on April 26, 1967, it was told of P. &. F. Enterprises, Inc.'s, presence on the land. Despite the existence of this lease, the appellant's attorney, Mr. Bell, in-

dicated to the state that the premises would be delivered free from this lease.

Mr. Baldwin testified that the state was willing to complete the purchase on June 30, 1967, but the appellee's presence on the land stopped this occurrence. On November 17, 1967, John Tuteur warranted that the lease would expire by December 31, 1967, and that if the lessee had not vacated the premises he, John Tuteur, would take all necessary action to eject the lessee from the premises.

Plaintiff's (appellant's) exhibit 105 indicates that because of the long delay in completing the sale John Tuteur was giving the university a gift of $3,000, provided the transaction was closed the week of November 17, 1967. Mr. Charles H. Cleminshaw, who helped handle the transaction for the state, testified that plaintiff's (appellant's) exhibit 107 accurately represented the situation and that Mr. Tuteur's gift of $3,000 was necessary at the closing.

P. & F. Enterprises had given a $700 security deposit to John Tuteur under the lease terms. This deposit was turned over to Cleveland State University at the closing on November 17, 1967. As yet this deposit has not been turned over to P. & F. Enterprises, Inc. When the sale was consummated in November, the property was in the same status it had been on April 26, 1967.

The Municipal Court found the following facts: the supersedeas bond was conditioned on the payment of rent and court costs; the plaintiff was entitled to $188 per month from May 1967 to November 1967; the defendant had given a $700 security deposit for the rent; the $700 security deposit was to be returned upon "full and faithful performances" of the agreement by lessee; and the breaches of the lease agreement were only technical breaches.

The court's conclusions of law were as follows:

"1. The Court concludes that the technical breaches set forth in No. 5 of its findings of fact were not prejudicial.

"2. The Court concludes that Plaintiff-Landlord is entitled to the sum of $616.00 for rent and water, said sum being calculated as follows:

| | |
|---|---:|
| "7 months rent and water | $1,316.00 |
| "Security deposit and credit | 700.00 |
| | |
| "Balance | $ 616.00 |

"3. The Court concludes that this action being based upon a supersedeas bond, said bond being conditioned for the payment of rent and court costs only, it has no jurisdiction as to Plaintiff's prayer for judgment for interest in the amount of $6,060.00 and for the $3,000.00 gift to Cleveland State University."

Assignment of error number one raises two questions. First, does the supersedeas bond limit the appellant's recovery to rent and court costs? Second, does a Municipal Court have the jurisdiction to award a plaintiff the interest lost on the purchase price of property, the payment of which was delayed by defendant's alleged conduct, or to award a plaintiff a payment allegedly required to make the buyer consummate the sale?

A supersedeas bond operates to stay the execution of a judgment while such judgment is being appealed to a higher court.

Section 2505.09, Revised Code, provides:

"No appeal shall operate as a stay of execution, except as provided in sections 2505.11 and 2505.12 of the Revised Code, until a supersedeas bond is executed by the appellant to the adverse party with sufficient surety and in such sum, not less than the amount of the judgment and interest, as is directed by the court making the order which is sought to be superseded or by the court to which the appeal is taken. Such bond shall be conditioned as provided in section 2505.14 of the Revised Code."

Section 2505.14, Revised Code, states:

"The supersedeas bond required by section 2505.09 of the Revised Code shall be payable to the adverse party or otherwise, as may be directed by the court, when the conflicting interests of the parties require it, subject to a condition to the effect that the party appealing shall abide and perform the order and judgment of the appellate court and pay all money, costs, and damages which may be required of or awarded against him upon the final determ-

ination of said appeal and such other conditions as the court may provide. * * *"

Those two sections combine to lay the framework for the utilization of the supersedeas bond. Section 2505.09 provides that a bond must be issued for "not less than the amount of the judgment and interest." Section 2505.14 states the conditions upon which the bond should be accepted by the court. These are: "to pay all money, costs, and damages."

In our case, the bond is conditioned in the statutory manner. There has been no attempt in the bond to limit the term "damages" to anything other than its normal usage. Therefore, since both the bond and the statute include the phrase, "to pay all money, costs, and damages," the supersedeas bond is not limited to rent and court costs.

Our focus now turns to the second issue raised by assignment of error number one. *Hunter* v. *Furcolow* (1954), 96 Ohio App. 521, explains the power of the Municipal Court in the area of damages due from a supersedeas bond. In that case, the plaintiff brought an action for money in the Municipal Court. The plaintiff was able to attach two bank deposits. Judgment was rendered for the defendant. The plaintiff, upon perfecting an appeal of this adverse judgment, filed a supersedeas bond in substantial conformity to Section 2505.14. The plaintiff lost the appeal, and the defendant filed a motion in the Municipal Court to recover "damages and costs."

The court, faced with the problem of whether the Municipal Court had jurisdiction to assess damages where the Court of Appeals had failed to impose a penalty for making the appeal, stated at page 524, "Certainly the Municipal Court was the court 'making the order,' and specific jurisdiction is given it by this section" (Section 2505.09). Therefore, the Municipal Court could determine damages where the Court of Appeals had not determined damages. The court also held that the Municipal Court has the power to award interest on the damages at a rate of six per cent. Thus, *Hunter* stands for the proposition that the Municipal Court is the forum in which a motion for assessment of damages due from a supersedeas bond should be

filed. The Municipal Court has jurisdiction to hear and determine what damages are due.

Applying that case to our situation, certain points become obvious. The appellant followed the correct procedure in filing a motion in the Cleveland Municipal Court to determine the money, costs and damages owed him by the appellee. The Municipal Court erred in its determination that it did not have the jurisdiction as to a consideration of the appellant's claim for interest and the $3,000 gift. It would be a paradox for the Municipal Court to make an order and then declare it lacked jurisdiction to enforce such order.

Thus, assignment of error number one is well taken. The bond was not limited to rent and court costs, and the Municipal Court has jurisdiction to allow damage claims. However, the alleged error complained of in assignment of error number one may not be prejudicial to the substantial rights of the appellant. This depends on the validity of assignments of error four and five. If both the claims for interest lost and the $3,000 gift are nonmeritorious, then appellant has not sustained damages by the Municipal Court's disclaimer of jurisdiction. In determining the validity of assignments of error four and five, we must ascertain what was intended as "damages" in respect to the supersedeas bond issued here.

After a tenant has held over, there is a definite rule that governs:

"* * * the tenant can only be held either (1) for the reasonable value of the use and occupation of the premises, or (2) for damages for the trespass, with, under appropriate circumstances, exemplary damages for his wilful holding over. * * *" *Lane* v. *Greene* (1926), 21 Ohio App. 62 at 68. However, those damages do not include the loss of profits. The fair rental value of the premises is deemed the damages that can be recovered when a tenant holds over. *Gottlieb* v. *Wick Rayen Motor Sales & Storage Co.* (1929), 8 Ohio Law Abs. 142.

Employing those general principles to the area of bond damages, we must view the problem slightly differently. We must inquire whether the term "damages" as employed in the supersedeas bond should be expanded in

the area of forcible detention to include loss of profits and/ or additional monetary impositions because of the time lag in retrieving one's property due to the appeal.

In an article published in 9 A. L. R. 3d 330 (1966), in discussing the amount of general damages recoverable in a forcible detainer action, it is pointed out that most United States courts give as damages the rental value of the property and not loss of profits when an aggrieved party seeks recovery under a supersedeas bond.

With those principles in mind, we can now focus on the supersedeas bond issued in cases of forcible detainer. In *Shafer* v. *Stein* (1945), 78 Ohio App. 47 at 49, the court stated that the bond "should be in a sum which would meet any possible costs and damages which might be suffered by the appellees by the delay." This statement does not indicate whether the term "damages" includes loss of profits and additional expenses. However, the court's philosophy, illustrated at page 50, "We are cognizant that, * * *, the withholding of the premises for which they have fully paid and to which they have a deed is unusual, embarrassing and aggravating and possibly of a nature for which the law affords no remedy. We have no purpose, however, to take away from the appellants their right to the orderly processes of the law," indicates that the supersedeas bond is not employed to penalize appeals.

In *Shaucet* v. *Davis* (1957), 78 Ohio Law Abs. 395, the plaintiff procured a judgment in the Municipal Court for restitution. The defendant executed a bond while he maintained exclusive possession of the premises. The plaintiff, while seeking recovery on the bond, urged that he suffered additional damages because of a delay in remodeling the premises. The court found the evidence speculative as to whether the delay in remodeling caused damage; therefore, the claim was disallowed. However, if the plaintiff could have proved the added burden he would have been able to collect under the bond.

In *Rice* v. *Burt* (1957), 79 Ohio Law Abs. 360, there was a motion against a surety on an appeal bond for damages suffered because certain funds had been attached. The defendants collected damages because of this deprivation of the use of their money. These damages were akin

to interest lost. That case is relevant to our situation for what it does *not* stand for. That case does not involve the possession of land. If land had been involved, the damages would have been the fair rental value of the property, not interest lost. To allow money not received plus the fair market rental of land as damages in forcible detainer cases would be a perversion of the case. *Rice* deals with instances where money, not land, is involved. To construe that case to be an extension of the damages collectible after an appeal has occurred would be unwise.

What conclusions can be drawn from those cases? First, there is no indication that loss of profits should be included in the damages recoverable from enforcement of the supersedeas bond. Ohio has long followed the prevailing rule that the holdover tenant is liable only for fair rental value. To make the tenant responsible for loss of profits would be a penalty.

Second, the consideration of additional expenses or burdens caused by the delay in returning possession is a legitimate item in the computation of damages. These burdens are distinguishable from loss of profits that are not allowed. These items are actual detriments that the delay brings on the landlord. These damages are what the lessor lost, not what he might have gained.

In our case, apppellant contends that the interest lost on the prospective sale price of $180,000 should be included in the damages allowable from the bond. Appellant asserts that *Rice* indicates that this interest is not lost profit but a deprivation of the use of money. This approach overlooks where the focus was in that case. There, attached money was involved; here, land is involved. To allow interest on the $180,000 in addition to rent would be an allowance of lost profits. The *Lane* rule should not be evaded in this obtuse manner. A supersedeas bond should not be invoked to penalize appeals. Appellant's claim for interest on the prospective purchase price is overruled.

The $3,000 gift by John Tuteur to Cleveland State University should be allowed as damages if its payment was mandatory rather than voluntary. This money does not involve a lost profits problem—rather, whether this payment was a burden suffered by the lessor because of the

delay precipitated by the appeal. To determine its character, the facts should be scrutinized.

The state of Ohio knew, when the option was exercised in April 1967, of P. & F. Enterprises' occupation of the land. Mr. Baldwin testified that the state was ready to close the deal on June 30, 1967, but the continued presence of P. & F. Enterprises prevented this occurrence. Exhibit 105 states:

"As you know, there has been a long delay in closing the sale to you for the amount of $180,000 of property which I own in Cleveland, Ohio. I want to express my appreciation for the patience and understanding which the University has shown in this matter by making certain gifts to the University. Provided that this transaction is closed this week, I hereby agree to make a gift to the University of the amount of $3000 payable on the day that the transaction is closed."

Mr. Tuteur paid the University the $3,000 at the closing. In regard to the closing, Mr. Cleminshaw, the attorney for the state, replied on direct examination that all the conditions set forth in exhibit 107 were needed before closing could occur. Item 5-C of exhibit 107 states that Mr. Tuteur should present his $3,000 check to the state on November 17, 1967, the closing date.

The only other reference to the $3,000 is found in exhibit 106. There, Mr. Cleminshaw states, "Mr. Bell on behalf of Mr. Tuteur was not willing to agree to the original amount of the gift which Mr. Tuteur was going to make to the University. As a compromise, Mr. Tuteur will agree, as set forth in the enclosed letter, to make a $3,000 gift to the University at the closing. * * *."

The $3,000 given Cleveland State University is termed a gift by all the documents. Exhibit 105 speaks in respect to John Tuteur's gratitude for the patience the state has shown in its wait. Mr. Tuteur states he will make the gift, providing that there is a closing that week. Plaintiff's (appellant's) exhibit 106 indicates that the $3,000 figure was a compromise amount, while exhibit 107 states the need for presenting the gift at the closing. In no document, or in the trial record, does there appear to be a history of the motivation behind this gift. The suggestion of

the gift makes its appearance around November 15, 1967. The appellant does not present any testimony that the state forced this gift. One can only speculate as to the motivation behind Tuteur's payment of $3,000 to the University. While the gift was needed at the closing, the trial record does not tie this gift specifically to the delay occasioned by appellant's appeal. The record is bare as to Mr. Tuteur's own characterization of this amount. For example, did he deduct this payment on his federal income tax report?

This failure of the exhibits to indicate the voluntariness of the gift, plus the trial record's scarcity of discussion concerning this subject, is not conducive to allowing the appellant's claim. The mere fact that the $3,000 was needed at the closing could be explained away as evidencing the state's desire to be done with the Tuteur matter, rather than the imposition of a condition. The appellant's case is hurt most by this lack of evidence. Appellant has not shown that the state suggested or actually imposed the gift as a penalty because of the delay. Thus, assignment of error number five is overruled.

The failure of assignments of error four and five to state valid claims vitiates the court's mistakes pointed out by assignment of error number one. Appellant is not entitled to the interest lost on $180,000 for 140 days, nor is he entitled to repayment for his $3,000 gift to Cleveland State University. The Municipal Court's disclaimer of jurisdiction to allow these two items is not prejudicial to appellant.

Assignment of error number two states that the trial court erred in permitting the $700 lease security deposit to be credited against the lease rental due. This issue is complicated by appellant's act of turning the $700 rent security deposit over to Cleveland State University.

The law of Ohio concerning the return of a security deposit is best expressed in *Cain* v. *Brown* (1922), 105 Ohio St. 264 at 264, in paragraph one of the syllabus:

"Where a lessee in compliance with the terms of a written lease makes a deposit to secure the performance of the lease on his part, and the lessor exercises his right under the lease to dispossess the tenant and terminate the

lease for failure to comply with its terms, the deposit is not forfeited, and the tenant is entitled to recover the balance remaining after deducting rent and damages, if any, sustained by the landlord.''

Applying *Cain* to our case, if there had been no transfer of the deposit to Cleveland State University, P. & F. Enterprises, Inc., would have been able to set this deposit off against the rent it owed. Can P. &. F. Enterprises still set off the security deposit against rent owed, where the deposit is transferred during a sale of the reversion?

There is no Ohio law concerning the effect of this transfer of the rent security deposit. The United States courts appear to follow the stance taken by the New Jersey courts. *Kaufman* v. *Williams* (1919), 92 N. J. Law 182, 104 A. 202, held that the deposit was considered a pledge and that the liability to return the deposit does not run with the reversion but with the pledge. *Cummings* v. *Freehold Trust Co.* (1937), 118 N. J. Law 193, 191 A. 782, states the prevailing view in its syllabus:

''1. Where a lessee of a property deposits a sum of money with the lessor as security for the performance of the covenants in the lease, the pledgee is liable as such, not as lessor, for its return.

''2. The liability to return a deposit of money made as security for the performance of conditions in a lease does not run with the reversion, and one who purchases the property, subject to the lease, is not liable when there is no evidence that the purchaser assumed the obligation of returning the deposit.''

Therefore, the landlord may be held liable to the lessee unless the lessee chooses to pursue the grantee and the grantee has personally assumed liability or has received a credit for the deposit against the sale price.

In our case, the $700 was a personal liability that the landlord owed to P. & F. Enterprises. The failure of the lessee to live up to the terms of the lease did not eradicate this liability. When appellant transferred the deposit to Cleveland State University, he did not relieve himself of his responsibility to return the deposit to the tenant.

Two factors militate in favor of holding John Tuteur responsible for the deposit. First, John Tuteur considered

the lease terminated May 1, 1967. The Municipal Court ultimately agreed that the lease had been terminated. Since the lease ended on May 1, 1967, John Tuteur still had the deposit; therefore, he had the right to apply this deposit to any damage done to the property by a wrongful holdover. Also, he could apply this deposit to rent owed him.

Second, Cleveland State University did not assume any liability under the lease. In fact, Cleveland State did not recognize the lease. Cleveland State's acceptance of rent money from November to January was not an implicit assumption of liability. Cleveland State's desire to have the $700 turned over to it at the closing does not indicate that this turnover formed part of the consideration of the deal. The record is scarce as to Cleveland State's motivation in accepting the security deposit. Assuming that the acceptance of the $700 deposit by Cleveland State formed part of the consideration for the transfer of the property, the law does not make mandatory the pursuit of the landlord's grantee rather than the landlord. If P. & F. Enterprises, Inc., had expressly agreed to this transfer, it would be bound by principles of novation. This did not occur. Thus, P. & F. Enterprises should be entitled to have the $700 deposit set off against the rent owed the landlord. Assignment of error number two is, therefore, overruled.

Appellant's last assignment of error states that the Municipal Court erred in awarding appellant (plaintiff there) damages of $616 rather than $8,458.46. Since we have previously determined that the $3,000 gift and the interest lost on $180,000 are not valid claims, the rental of $1,316 constitutes the only damages suffered by appellant. This amount is subject to the $700 rent security deposit paid by the appellee. Thus, the Cleveland Municipal Court did not err, and appellant is entitled only to $616.

For reasons herein stated, the Cleveland Municipal Court awarded the appellant the correct amount of damages. The judgment of the Cleveland Municipal Court is affirmed.

*Judgment affirmed.*

Artl and Day, JJ., concur.