JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Deborah W. Fegan, D.V.M., ("Fegan") appeals from the judgment of the Parma Muncipal Court finding in favor of plaintiff-appellee, Colombo Enterprises, Inc. ("Colombo"), on its claim for loss of fair market rental value. For the reasons that follow, we affirm in part and reverse in part.
 {¶ 2} In June 1998, Colombo purchased property located at 7274 Pearl Road in Middleburg Heights. The property contained a commercial building in which Fegan, a veterinarian, operated an animal clinic. Colombo's purchase was subject to a lease in favor of Fegan, which was to expire on January 31, 2002.
 {¶ 3} Colombo's plan was to raze the clinic in order to construct a Walgreen's drugstore. Colombo tried to help Fegan find alternate locations for her animal hospital, even offering her $100,000 at one point to entice her to move, but was unsuccessful in doing so. When it became apparent in November 1999 that Fegan intended to remain on the property until her lease expired, Colombo began insisting that she repair the premises, in an apparent effort to force her to vacate. Colombo, which had already presented its plans for construction of a Walgreen's on the property to the City of Middleburg Heights (the "City") for approval, also contacted various City and OSHA officials to report alleged code violations on the property.
 {¶ 4} Eventually, in March 2000, Colombo filed a complaint for forcible entry and detainer, alleging that Fegan had breached the terms of the lease by failing to maintain and repair the property, and for damages and waste to the premises and loss of fair market rental value. Fegan answered and counterclaimed for breach of the covenant of quiet enjoyment, harassment, injunctive relief and abuse of process.
 {¶ 5} When the municipal court refused to certify the case to the common pleas court, Fegan filed an application for an alternative writ of prohibition, asking this court to prohibit the municipal court from proceeding with trial. This court denied the writ and, subsequently, also dismissed Fegan's appeal of the denial of her motion to certify.
 {¶ 6} Trial proceeded in the municipal court solely with respect to appellee's forcible entry and detainer claim for possession of the rental property. The trial court found in favor of Colombo and granted a writ of restitution, ruling, without citing any specific evidence, that "evidence presented showed that [Fegan] had breached [her] duties and contractual responsibilities as accepted and agreed to in the Lease Agreement by and between the parties."
 {¶ 7} Fegan appealed from this order and posted a supersedeas bond in the amount of $22,500. As a condition of the bond, Fegan continued to pay her monthly rent in the amount of $2,115.58.
 {¶ 8} In April 2001, this court affirmed the trial court's judgment granting possession of the property to Colombo. Fegan eventually vacated the premises in September 2001.
 {¶ 9} Fegan dismissed her counterclaim and filed a motion for return of the supersedeas bond. Trial proceeded before a magistrate in the municipal court on Colombo's claim for damage to the property and waste. The magistrate subsequently issued a judgment entry and opinion in which she found that Colombo had failed to prove any damages to the property to support its claim for waste.
 {¶ 10} With respect to Colombo's claim for loss of fair market rental value, the magistrate found that although Fegan had been evicted as of May 9, 2000, she held over by right of appeal and posting of the supersedeas bond and compliance with rent payments during the appeal process. The magistrate further found that the fair market value of the property for the period June 2000 through September 2001 was $17 per square foot, rather than the approximately $13 per square foot that Fegan had been paying, and, therefore, Colombo's loss for fair market rental value for that period was $10,768.32.
 {¶ 11} After the trial court affirmed the magistrate's order, Fegan appealed and Colombo cross-appealed.
 FEGAN'S APPEAL {¶ 12} A supersedeas bond operates to stay the execution of a judgment while such judgment is being appealed to a higher court.Tuteur v. P. F. Enterprises, Inc. (1970), 21 Ohio App.2d 122,126. In a case involving forcible entry and detainer, a tenant who posts a supersedeas bond to appeal an eviction is considered a hold-over tenant and the landlord is entitled to damages for such holdover. These damages are the fair rental value of the premises during the holdover period. Id. at 130.
 {¶ 13} During the trial, Colombo attempted to present the testimony of Chris DiPiero, a real estate agent and owner of a real estate agency, as expert testimony regarding the fair market rental value of the property. DiPiero testified that he had been a realtor and appraiser for six years and that 4% of his work involved commercial real estate while 96% of his work involved residential real estate. He testified that he had leased only four or five commercial properties during his real estate career and, further, that he was licensed only as a real estate salesperson and did not have an appraisal license.
 {¶ 14} DiPiero testified that he had never been in Fegan's animal clinic because it had been razed by the time he was asked to appraise the property for Colombo, so he looked at photographs of the building and at court records. He also "did some research" regarding the price per square foot for "in-line units" in other strip malls and of a commercial building located near Colombo's property. DiPiero testified that the average rental rate for units in strip malls was $17 per square foot and the rate for the commercial building was approximately $30 per square foot. DiPiero admitted, however, that there was no other zoning in Middleburg Heights like that for Fegan's veterinary clinic and "there weren't really any comparables to use for this particular property." DiPiero also admitted that he had not done a cost analysis when preparing his report, had not reviewed the lease agreement between Fegan and Colombo and was not aware there was a Consumer Price Index adjustment in the lease.
 {¶ 15} In light of DiPiero's admissions, the magistrate disqualified him from testifying as an expert, but allowed him to give his opinion as a realtor as to the fair market rental value of the property. According to DiPiero, the fair market rental value was $4,100 per month.
 {¶ 16} The magistrate subsequently rejected DiPiero's opinion regarding the fair market rental value as "not realistic," but concluded that the fair market rental value was $17 per square foot, the figure DiPiero had given as the average rental cost for "in-line units" in strip malls. Accordingly, she held that Colombo was entitled to $10,768.32 in lost rent from June 2000 through September 2001, the period when Fegan held over on her lease.
 {¶ 17} Fegan contends on appeal that the trial court abused its discretion in using the $17 per square foot figure to determine the fair market rental value because the only basis for the $17 figure was DiPiero's non-expert opinion, which was totally unsubstantiated.
 {¶ 18} Although, as Colombo correctly asserts, fair market value of real estate may be proved by expert or non-expert testimony, Orley v. Orley (Dec. 12, 1996), Cuyahoga App. No. 69622, a trial court must have an evidentiary basis for assessing a value to a piece of real estate. Id., citing Campitelli v.Campitelli (1989), 65 Ohio App.3d 307. "It is not the task of an appellate court to require the adoption of any particular method of valuation, but to determine whether, in light of all the facts and circumstances before it, the trial court abused its discretion in arriving at the determined value." Id.
 {¶ 19} Our review of the facts of this case demonstrates that the trial court's determination of the fair market rental value was not based on credible evidence, and thus was an abuse of discretion. DiPiero admitted that he had no personal knowledge of the property at issue, much less with commercial property in general. DiPiero also admitted that he had failed to find any similar properties with which to compare the animal clinic. Moreover, although he testified that $17 per square foot was the average rental cost of "in-line" retail units in strip malls, he did not identify the units or strip malls he analyzed to get this figure, whether those units were in close proximity to the animal clinic, or even whether those units and strip malls were located in Middleburg Heights. Furthermore, the property at issue was not a retail unit in a strip mall; it was a free-standing building that housed an animal clinic, which is a very different commercial use than mall retail.
 {¶ 20} In addition to the inadequacies of DiPiero's testimony, we find it inconsistent for the trial court to disqualify DiPiero as an expert and, further, to reject his non-expert opinion regarding the property at issue, but then to rely on his assessment of the fair market rental value for unrelated properties.
 {¶ 21} Accordingly, we hold that the trial court erred when it adopted $17 per square foot as the fair market value because its finding was not based on competent evidence. Therefore, that portion of the trial court's order awarding Colombo $10,768.32 in additional rent for the period June 2000 through September 2001 is reversed.
 {¶ 22} Appellant's assignment of error is sustained.
 COLOMBO'S CROSS-APPEAL {¶ 23} In its first assignment of error, Colombo argues that the trial court should have awarded it loss of fair market rental value for October 2001 through January 2002, the remaining months of the lease period. Colombo contends that Dennis v. Morgan
(2000), 89 Ohio St.3d 417, stands for the proposition that it is automatically entitled to loss of fair market rental value for these four months. We disagree.
 {¶ 24} In Dennis, the landlord filed a forcible entry and detainer action against its tenant and gave the tenant the required three-day notice to vacate. After the tenant vacated the premises, the landlord filed suit to recover rent for the period of time the premises remained vacant through the lease termination date. The Ohio Supreme Court held, however, that a landlord is not automatically entitled to rent as post-termination damages. The court stated,
 {¶ 25} "As in any other breach of contract action, a plaintiff landlord must prove damages. * * * Lessees are potentially liable for rents coming due under the agreement as long as the property remains unrented. The important corollary to that is that landlords have a duty, as all parties to contracts do, to mitigate their damages caused by a breach. Landlords mitigate by attempting to rerent the property. Their efforts to do so must be reasonable, and the reasonableness should be determined at the trial level. If the lessor has acted reasonably in attempting to secure a new tenant, the lessee is liable for the rent up to the point of the lessor's finding a new tenant, or the expiration of the lease, whichever is earlier." Id.
 {¶ 26} Here, Don Conrad testified that Colombo showed the property to two prospective tenants, but neither tenant was interested in leasing the property because it needed repairs. Conrad testified further that Colombo decided not to make the repairs for any short-term tenant because its plan was to raze the building for a Walgreen's drugstore. Fegan testified that she would have stayed on the property, however, and paid rent through the lease term.
 {¶ 27} In light of this testimony, the trial court did not err in not awarding Colombo rent for the period of October 2001 through January 2002. Colombo obviously decided to forego additional rent from Fegan or any other tenant so it could pursue its plan to construct a Walgreen's store on the property.
 {¶ 28} Cross-appellant's first assignment of error is overruled.
 {¶ 29} In its second assignment of error, Colombo contends that the trial court erred in finding in favor of Fegan on its claim for waste.
 {¶ 30} The damages recoverable by a landlord from his or her tenant in an action for waste are generally measured by the diminution in the value of the leased property resulting from the waste, or, in other words, by the difference between the market value of the property immediately before and immediately after the waste. Damages may also be measured by the cost to repair the property or restore it to the condition it would have been in had the waste not occurred. 65 Ohio Jurisprudence 3d (1985) 404, Damages, Section 403.
 {¶ 31} Our review of the record indicates that Colombo offered no evidence regarding the value of the property before or after the alleged waste. Colombo offered some evidence of estimated repairs, but Don Conrad testified that Colombo never made any of the repairs after Fegan vacated the premises. Furthermore, Fegan testified that she made various repairs to the property in 1999 and 2000, and that, upon inspection, the City informed her that all the repairs met the building code.
 {¶ 32} In light of this evidence, the trial court did not err in finding that Colombo had failed to meet its burden of establishing its claim of waste.
 {¶ 33} Cross-appellant's second assignment of error is overruled.
Affirmed in part; reversed in part.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., concurs.
 Dyke, J., concurs in judgment only.