NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1895
_____

JAMES KLEIN,
Appellant

v.

SUPERINTENDENT SMITHFIELD SCI;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-00065)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted under Third Circuit L.A.R. 34.1(a)
December 16, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, *Circuit Judges*.

(Filed: February 26, 2021)
_____

OPINION[*]
_____

FUENTES, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

James Klein appeals an order of the District Court denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Klein claims he was denied effective assistance of counsel based on his trial lawyer's failure to call an alibi witness and failure to raise a Confrontation Clause objection. We will affirm.

I.

Klein was convicted in Pennsylvania state court in 2004 for the murders of Danny Jones and Dwight Jenkins and received two consecutive life sentences. The Commonwealth explained the killings as the result of a feud between drug dealers. According to the Commonwealth, the victims, who made a living robbing other drug dealers, had previously kidnapped and beaten Klein, demanding information on the whereabouts of a rival dealer whom they wanted to rob—Melvin Marrero. Klein later agreed to lead the victims to Marrero, and then shot them while en route.

The victims were found shot in the head in the front seats of a van parked several blocks from Marrero's home, but no physical or eyewitness evidence connected Klein to the killings. Instead, the Commonwealth relied primarily on statements given to police by Klein's associates and testimony from law enforcement and the victims' friends.

David Foster, a friend of the victims, testified that Jones and Jenkins left Foster's home on the night of the murders to meet Klein at a diner and then travel together to Marrero's home in Philadelphia. Foster testified that Jones called him from the car, and

2

that Foster asked Jones to call him back when "everything was over."[1]  When Jones failed to answer Foster's repeated attempts to contact him, Foster and two friends drove to Philadelphia early the following morning.  Foster testified that while he was circling the area around Marrero's home, he saw Klein and Marrero's brother emerge from an alley, get into a car, and drive away.

In signed statements, both Marrero and another associate, Ketkarun Boonsong, told detectives that Klein had separately confessed to committing the murders.  Marrero's statement recounts a detailed confession from Klein: "Klein said Danny lit a cigarette . . . [a]nd told Klein that he was going to kill me," and "Klein told me that he shot Danny first and Dwight second," after which "he got into a car around the corner and drove off."[2] The two statements also gave accounts of the victims' kidnapping of Klein.  Both Marrero and Boonsong testified at trial and recanted their statements; Marrero claimed that his statement had been coerced, and Boonsong denied having told detectives the information they transcribed as his statement.

Detective Joseph Centeno, who was present during Marrero's interview, testified that Marrero also told police that he drove Klein to a train station about six months after the killings so that he could travel to the West Coast under an alias—information which led to Klein's arrest in Las Vegas a week later.  Defense counsel did not object to Centeno's testimony on hearsay or Confrontation Clause grounds.  When Marrero testified, he denied taking Klein to the train station, denied knowledge of the purported

---

[1] App. 491-92.
[2] App. 506.

alias, and testified that Klein had gone to Las Vegas in order to work on music with the Wu Tang Clan, a rap group. In her closing remarks, the prosecutor described the testimony about Klein's travel to Las Vegas under an alias as evidence of flight, and the trial court instructed the jury that flight may tend to prove consciousness of guilt.

Klein appealed his conviction and sentence, and the Pennsylvania Superior Court affirmed. Klein then sought relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), claiming, among other things, that trial counsel was ineffective for (1) failing to call Klein's friend, Calvin Flowers, as an alibi witness and (2) failing to object on hearsay grounds to the admission of Marrero's out-of-court statements about Klein's flight and alias, and the subsequent closing remarks and jury instructions regarding flight. The PCRA court denied relief, and the Superior Court affirmed.

Klein then filed a petition for writ of habeas corpus in the District Court, replacing the hearsay claim with a claim that trial counsel rendered ineffective assistance by failing to object to Marrero's out-of-court statements on Confrontation Clause grounds. A magistrate judge recommended dismissing the petition. The District Court directed that an evidentiary hearing be held before the magistrate judge on the issue of whether trial counsel had a reasonable strategy for not objecting to the admission of and references to Marrero's out-of-court statements. The District Court then denied habeas relief but granted a certificate of appealability on Klein's Confrontation Clause claim. Klein appealed, and we expanded the certificate to include Klein's claim that trial counsel rendered ineffective assistance in failing to call the alibi witness.

4

## II.

The District Court exercised jurisdiction over Klein's petition pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction to review the District Court's decision pursuant to 28 U.S.C. §§ 1291 and 2253.

Because the District Court ruled on Klein's alibi witness claim without an evidentiary hearing, our review of that decision is plenary.[3] We review any findings of fact drawn from the District Court's evidentiary hearing on Klein's Confrontation Clause claim for clear error and exercise plenary review of the District Court's legal conclusions.[4]

"We apply the same standards as the District Court, as mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')."[5] Under AEDPA, our review turns on whether Klein's claims were "adjudicated on the merits in State court."[6] If a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7] Where a state court has not adjudicated a claim on the merits, we

---

[3] *See Jacobs v. Horn*, 395 F.3d 92, 99 (3d Cir. 2005).
[4] *See Morris v. Beard*, 633 F.3d 185, 193 (3d Cir. 2011).
[5] *Jacobs*, 395 F.3d at 99.
[6] 28 U.S.C. § 2254(d).
[7] *Id.* § 2254(d)(1)-(2).

5

presume the state court's factual findings are correct unless rebutted by clear and convincing evidence and review legal questions *de novo*.[8]

## III.

Klein's claims of ineffective assistance of counsel are "governed by the familiar two-part test set forth in *Strickland v. Washington*."[9]  Under *Strickland*, Klein "must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different."[10]  To satisfy *Strickland*'s prejudice prong, Klein "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case'—rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'"[11]

### A. Alibi Witness

At the close of the Commonwealth's case, the trial judge asked Klein whether there were any fact witnesses that he wished to call, to which Klein responded "[n]o," and whether there were any witnesses whom his attorney had not contacted, to which Klein responded that there were none "to [his] knowledge."[12]  Klein claims that he

---

[8] *See Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009).

[9] *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984) (internal quotation marks omitted)).

[10] *Id.*

[11] *Jacobs*, 395 F.3d at 105 (quoting *Strickland*, 466 U.S. at 693-94).

[12] App. 562-63.

informed his counsel before trial that he had been with his friend, Calvin Flowers, at the time of the murders. Klein's habeas petition includes an affidavit from Flowers stating that he was willing to testify that he was with Klein in Irvington, New Jersey, from 7 p.m. until about 4 to 6 a.m. on the night of the murders, and that he telephoned Klein's trial counsel but never received a call back. Klein argues that trial counsel's failure to investigate and to call Flowers to testify was objectively unreasonable and prejudiced his defense.

The PCRA court dismissed this claim, finding that Klein had voluntarily waived the right to call additional witnesses during the colloquy with the trial court. The Superior Court took a different approach, rejecting the claim exclusively on prejudice grounds, and applied a standard that mirrors the *Strickland* test.[13] The Superior Court reasoned that, in light of the evidence that "Klein had a motive to kill the victims because they kidnapped and beat him the week before," as well as the evidence that Klein had confessed to Marrero and Boonsong, Klein could not "show a reasonable probability that the outcome of his trial would have been different if only trial counsel had called Flowers as a witness."[14]

We agree with the District Court that the Superior Court's decision was neither contrary to nor an unreasonable application of *Strickland*. Klein argues that the Superior Court understated the potential impact of Flowers's proposed testimony and accorded too

---

[13] *See Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987) (holding that Pennsylvania's two-part ineffectiveness standard and the *Strickland* test "constitute the same rule").
[14] App. 753-54.

much weight to the statements of Marrero and Boonsong, which were recanted at trial. However, as the District Court explained, both witnesses offered only "unsubstantiated explanations for why they would [have] falsely implicate[d]" Klein, and

> their recantations were substantially undermined because: (i) both individuals signed each page of their statements; (ii) Boonsong had appeared in court in December 2002, after his original statement, and provided testimony identical to that in his statement; and (iii) . . . the two officers who took the statements from Marrero and Boonsong . . . unequivocally testified that the statements were accurate and knowingly and voluntarily given.[15]

> In addition to those statements, Klein's conviction was supported by testimony

from Jones's girlfriend, Catherine Johnson, who corroborated Foster's testimony that Jones intended to meet with Klein on the night of the murders, as well as by Foster's testimony that he saw Klein fleeing an area near the crime scene the following morning. By contrast, the proposed alibi testimony lacks specificity and is unsupported by corroborating evidence, such as phone records, receipts, or other eyewitnesses.[16]

---

[15] App. 75.

[16] Klein's reliance on *Branch v. Sweeney*, 758 F.3d 226 (3d Cir. 2014), and *Grant v. Lockett*, 709 F.3d 224 (3d Cir. 2013), *abrogated on other grounds by Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 293 (3d Cir. 2016), is unavailing. In *Branch*, we remanded for an evidentiary hearing to determine whether trial counsel was ineffective for failing to call two potential witnesses where the jury "quite clearly was torn" and "sent a number of questions to the court during deliberations." 758 F.3d at 230. Because the evidence in that case was "relatively balanced" and the proposed witnesses would have corroborated the petitioner's story, we concluded that there was a reasonable probability that the witnesses' testimony would have changed the outcome. *Id.* at 228. But here, the evidence was not so balanced, and the jury gave no indication that it was "torn" as to Klein's guilt. In *Grant*, we did not reach the merits of the petitioner's claim based on trial counsel's failure to call two witnesses because we had already determined that habeas relief was warranted on a separate *Strickland* claim, but we noted that the strength of the witnesses' proposed eyewitness testimony supported the prejudice conclusion that we had already reached on independent grounds. 709 F.3d at 239.

The Superior Court considered these facts and found the proposed Flowers testimony was not reasonably probable to change the outcome. Because, at minimum, "'fairminded jurists could disagree' on the correctness" of the Superior Court's decision, that determination "precludes federal habeas relief" under AEDPA's deferential standard.[17] Accordingly, the District Court correctly rejected this claim.[18]

## B. Confrontation Clause Objection

As a preliminary matter, the Commonwealth argues that Klein's claim that trial counsel was ineffective for failing to object on Confrontation Clause grounds to Marrero's out-of-court statement is procedurally defaulted because he failed to raise it in his PCRA proceedings. Instead, Klein's PCRA petition claimed that counsel was ineffective for not objecting to the statement on state law hearsay grounds. Klein therefore concedes that his Confrontation Clause claim is procedurally barred unless he can satisfy the exception established by *Martinez v. Ryan*.[19] However, we need not

---

[17] *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[18] We reject Klein's cursory assertions that he is entitled to an evidentiary hearing on his alibi witness claim, as Klein's briefing neither explains why the District Court's decision not to hold a hearing constituted an abuse of discretion nor invokes the considerations that guide a habeas court's exercise of that discretion. *See Palmer v. Hendricks*, 592 F.3d 386, 393-94 (3d Cir. 2010).

[19] *See Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 & nn.19-20 (3d Cir. 2019) (citing *Martinez v. Ryan*, 566 U.S. 1, 14 (2012)).

decide whether Klein's Confrontation Clause claim satisfies *Martinez* because, as explained below, we reject this claim on the merits.[20]

Both the PCRA court and the Superior Court rejected Klein's hearsay claim based on counsel's performance without reaching the issue of prejudice. The Superior Court determined that Marrero's out-of-court statement was offered to explain law enforcement's course of conduct and was therefore not hearsay; as a result, the Superior Court found that any objection by counsel would have been meritless.

The District Court held that Marrero's out-of-court statement was admitted for its truth—that Klein fled to Las Vegas under an alias—and that the Superior Court's decision to the contrary was an unreasonable application of *Strickland*. The District Court further found that the statement was testimonial and that it was "at best[] unclear" whether Marrero's presence on the witness stand prior to Centeno's testimony satisfied Klein's right to confrontation.[21] Because trial counsel acknowledged at the evidentiary hearing that "he had no strategy for failing to raise an objection," the District Court found counsel's performance deficient.[22] The District Court nevertheless denied relief, concluding that the admission of the statement did not prejudice Klein.

---

[20] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012) ("Because we will deny [the petitioner's] claims on the merits, we need not address the issue of exhaustion in this case.").

[21] App. 62; *see Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) (holding that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination").

[22] App. 70.

10

*Strickland* instructs that "a court need not determine whether counsel's performance was deficient before examining . . . prejudice," and that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."[23]  We believe that to be the case here.

Reviewing the issue of prejudice *de novo* in the absence of a state court decision on the merits,[24] we agree with the District Court that Klein fails to show a reasonable probability that the exclusion of Marrero's out-of-court statement, the prosecutor's references to it in her closing, or the flight instruction would have changed the outcome of the trial.  Considering the totality of the evidence, including the confessions and testimony cited above, Klein's conviction was well-supported even absent the flight and alias statements.[25]  Furthermore, as the District Court recognized, the flight and alias statements were "not so suggestive of guilt as to clearly have impacted the trial."[26]  Klein did not depart for Las Vegas until about six months after the killings.  The jury also heard Marrero deny taking Klein to the train station, deny knowledge of Klein's alias, and testify that Klein traveled to Las Vegas for legitimate reasons—all of which weakened the impact of Centeno's contrary testimony, the prosecutor's related closing remarks, and

---

[23] 466 U.S. at 697.
[24] *See Simmons*, 590 F.3d at 231.
[25] *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").
[26] App. 76.

11

the flight instruction.  Therefore, Klein fails to show a probability of prejudice "sufficient to undermine confidence in the outcome" of his trial.[27]

## IV.

For the foregoing reasons, we will affirm the order of the District Court.

---

[27] *Strickland*, 466 U.S. at 694.